

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
05/15/2012

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 09-34452 |
| BISON BUILDING HOLDINGS, INC., *et al* | § | CHAPTER 11 |
| | § | |
| Debtor(s). | § | JUDGE ISGUR |
| | § | |
| | § | |
| POST-CONFIRMATION COMMITTEE | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | ADVERSARY NO. 11-3339 |
| | § | |
| TOMBALL FOREST, LTD. | § | |
| | § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION

Defendant Tomball Forest, Ltd. has moved for summary judgment. The chapter 11 Plan for Debtors Bison Building Holdings, Inc.; Bison Multi-Family Sales, LLC; Bison Construction Services, LLC; Bison Building Materials Nevada, LLC; Bison Building Materials, LLC; Bison Building GP, Inc.; HLBM Company; and Milltech, Inc. (collectively, "Bison") established a Post-Confirmation Committee. The Committee sued Tomball Forest to avoid allegedly preferential transfers from Bison.

Tomball Forest argues that it is entitled to summary judgment on the basis of its contemporaneous exchange and ordinary course affirmative defenses. The Committee filed a cross motion for summary judgment as to Tomball Forest's contemporaneous exchange defense. The Court denies Tomball Forest's motion for summary judgment and grants the Committee's motion for partial summary judgment.

## Jurisdiction

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This proceeding has been referred to the Bankruptcy Court by General Order 2005-06. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## Bankruptcy Court's Authority

This is a proceeding to recover allegedly preferential transfers under 11 U.S.C. § 547(b). This Court may not issue a final order or judgment in matters that are within the exclusive authority of Article III courts. *Stern v. Marshall*, 131 S.Ct. 2594, 2620 (2011). The Court may, however, exercise authority over essential bankruptcy matters under the "public rights exception." Actions to recover preferential transfers under § 547 fall within the Bankruptcy Court's constitutional authority. *West v. Freedom Medical, Inc. (In re Apex Long Term Acute Care—Katy, L.P.)*, 465 B.R. 452 (Bankr. S.D. Tex. 2011).

Under *Thomas v. Union Carbide Agricultural Products Co.*, a right closely integrated into a public regulatory scheme may be resolved by a non-Article III tribunal. 473 U.S. 568, 593 (1985). The Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including "the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." *Central Va. Cmty. College v. Katz*, 546 U.S. 356, 363-64 (2006); *see Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982) (plurality opinion) (noting in dicta that the restructuring of debtor-creditor relations "may well be a 'public right'"). *But see Stern*, 131 S.Ct. at 2614 ("We noted [in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 n.11

(1989)] that we did not mean to 'suggest that the restructuring of debtor-creditor relations is in fact a public right.'").

To determine whether a matter falls within the public rights exception to exclusive Article III authority, the Court examines whether an issue "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 131 S.Ct. at 2618; *Apex*, 465 B.R. at 460. A matter stems from the bankruptcy itself if the right is established by the Bankruptcy Code or if the substantive outcome of the issue is affected by bankruptcy law. *Apex*, 465 B.R. at 460. A matter would necessarily be resolved in the claims allowance process if it can be resolved through the exercise of *in rem* jurisdiction over the bankruptcy estate or if the proceeding is necessary to effectuate such *in rem* jurisdiction. *Id.*

Preferential transfer actions both stem from the bankruptcy itself and are decided primarily pursuant to *in rem* jurisdiction. The right to recover preferential transfers is established by the Bankruptcy Code, and preferential transfer actions are fundamental to the bankruptcy scheme. *Id.* at 463. Preferential transfer actions also fall within, or are necessary to effectuate, a bankruptcy court's *in rem* jurisdiction over the property of the estate. *Id.* at 463-64 (citing *Katz*, 546 U.S. at 372). The Bankruptcy Code effectively treats preferentially transferred property as if it had always been property of the estate. *Id.* at 464. The determination of avoidance therefore falls within a bankruptcy court's *in rem* jurisdiction, and the court may issue a turnover order under § 550(a) "ancillary to and in furtherance of the court's *in rem* jurisdiction." *Id.* (quoting *Katz*, 546 U.S. at 372).

Because preferential transfer actions stem from the bankruptcy itself and can be decided through *in rem* jurisdiction, the Court has constitutional authority to enter a final judgment in this adversary proceeding.

**Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[1] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object

---

[1] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403. Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

**Summary Judgment Evidence**

Tomball Forest provides two pieces of summary judgment evidence:

- Affidavit of Vince Goodman, stating that Tomball Forest invoiced Bison for the amounts paid during the preference period, Def's Ex. A; ECF No. 22-1, at 1-2;

- Chart showing allegedly preferential transfers to Tomball Forest along with invoice dates associated with the transfers, Def's Ex. B; ECF No. 22-1, at 3.

The Committee did not provide additional summary judgment evidence.

**Background**

Bison filed for chapter 11 bankruptcy on June 28, 2009.  Case No. 09-34452.  Bison's chapter 11 plan was confirmed on June 29, 2010.  Case No. 09-34452, ECF No. 589.  The Plan established a Post-Confirmation Committee.  The Committee was granted the exclusive right to pursue all avoidance actions.  Case No. 09-34452, ECF No. 589-2, at 7.

The Committee filed this preferential transfer action against Tomball Forest on June 24, 2011.  ECF No. 1.  Tomball Forest filed an answer on July 20, 2011, ECF No. 7, and an amended answer on August 29, 2011, ECF No. 13.

Tomball Forest filed a motion for summary judgment on February 28, 2012.  ECF No. 22.  The Committee filed a response and cross motion for partial summary judgment on March 20, 2012.  ECF No. 27.  Tomball Forest filed a reply to the Committee's response and a response to the Committee's cross motion on April 3, 2012.  ECF No. 28.

Tomball Forest argues that Bison's transfers to Tomball Forest were in the ordinary course of business and were also contemporaneous exchanges for new value, and therefore are not avoidable preferences under § 547.  11 U.S.C. § 547(c)(1) & (2).  ECF No. 22 at 4.

Goodman's affidavit, which is Tomball Forest's major piece of summary judgment evidence, states that the allegedly preferential transfers were payments on four invoices:

- On March 5, 2009, Tomball invoiced Bison $14,007.32 for lumber products it provided to Bison.  On April 9, 2009, Bison paid Tomball $14,007.32 for the lumber products it received from Tomball.

- On March 18, 2009, Tomball invoiced Bison $14,237.34 for lumber products it provided to Bison.  On April 20, 2009, Bison paid Tomball $14,237.34 for the lumber products it received from Tomball.

- On April 13, 2009, Tomball invoiced Bison $30,842.39 for lumber products it provided to Bison.  On May 12, 2009, Bison paid Tomball $30,842.39 for the lumber products it received from Tomball.

- On April 30, 2009, Tomball invoiced Bison $4,020.01 for lumber products it provided to Bison.  On June 17, 2009, Bison paid Tomball $4,020.01 for the lumber products it received from Tomball.

Def's Ex. A; ECF No. 22-1, at 2-3.  Tomball Forest also provides a schedule of Tomball Forest invoices and Bison payments, purportedly prepared by the Committee's counsel.  Def's Ex. B; ECF No. 22-1, at 3.  Tomball Forest's Exhibit B, which has the heading "Preferential Transfers" lists four payments, with the same invoice dates, amounts, and payment dates, as the transactions listed in Goodman's affidavit.

The Committee argues that summary judgment is premature.  Tomball Forest filed the motion for summary judgment just after both parties had filed their initial disclosures and before either party had yet served discovery.  ECF No. 27, at 1-2.  The Committee also argues that Tomball Forest's admissions in its answer, ECF No. 13, show that Tomball Forest cannot prevail on its contemporaneous exchange defense.  The Committee therefore moves for partial summary judgment with respect to the contemporaneous exchange defense.

**Analysis**

The Committee has sued Tomball Forest to avoid allegedly preferential transfers under § 547 of the Bankruptcy Code. Under § 547(b), a transfer is avoidable if it (1) benefits the creditor; (2) is made in payment of a debt that is antecedent to the transfer; (3) is made while the debtor is insolvent; (4) is made within ninety days before the filing of the bankruptcy petition; and (5) enables the creditor to receive more than it would under chapter 7 bankruptcy proceedings. *Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba, Inc.)*, 416 F.3d 394, 398 (5th Cir. 2005). Section 547(c) lists eight exceptions to the general rule of avoidability under § 547(b), including contemporaneous exchange for new value, § 547(c)(2), and ordinary course of business, § 547(c)(1). *Id.*

Tomball Forest does not argue that the Committee cannot prove an essential element of a preferential transfer claim under § 547. Instead, Tomball Forest argues that it is entitled to summary judgment on the basis of its two affirmative defenses, contemporaneous exchange and ordinary course of business.

Tomball Forest bears the burden of proof as to its affirmative defenses. As the moving party, Tomball Forest must provide evidence that would entitle it to a judgment at trial as to at least one of the affirmative defenses. Tomball Forest does not meet this burden with respect to either of the affirmative defenses. The Court therefore denies Tomball Forest's motion for summary judgment.

The Committee argues that it is entitled to partial summary judgment as to Tomball Forest's contemporaneous exchange defense. According to the Committee, Tomball Forest's own evidence and admissions in its answer establish, as a matter of law, that the exchanges were not substantially contemporaneous. Because Tomball Forest's own evidence establishes that the

parties did not intend the exchange to be contemporaneous, the Court grants the Committee's motion for partial summary judgment.

*Contemporaneous Exchange*

Section 547(c)(1) provides an affirmative defense to a preferential transfer action for a contemporaneous exchange for new value:

> The trustee may not avoid under this section a transfer to the extent that such transfer was—
>
> > (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> > (B) in fact a substantially contemporaneous exchange[.]

11 U.S.C. § 547(c)(1).

The purpose of the contemporaneous exchange exception is to protect transactions that do not result in a diminution of the bankruptcy estate. *Velde v. Kirsch*, 543 F.3d 469, 472 (8th Cir. 2008). If new value is given, a contemporaneous exchange does not diminish the estate. *Id.*

To defend itself under § 547(c)(1), a creditor must demonstrate "intent, contemporaneousness and new value." *Southmark Corp. v. Sculte Roth & Zabel (In re Southmark Corp.)*, 2000 WL 1741550, at *3 (5th Cir. 2000) (quoting *Tyler v. Swiss Am. Sec. (In re Lewellyn & Co.)*, 929 F.2d 424, 427 (8th Cir. 1991)). Whether intent, contemporaneousness, and new value exist are questions of fact. *Id.*

"The critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange." *McClendon v. Cal-Wood Door (In re Wadsworth Bldg. Components, Inc.)*, 711 F.2d 122, 124 (9th Cir. 1983). Courts determine the parties' intent by examining evidence of the parties' mutual understanding of the payment arrangement and evidence of how payments were reflected on the parties' books. *See Hechinger*

*Inv. Co. of Del., Inc. v. Universal Forest Prods., Inc.*, 489 F.3d 568, 575 (3d Cir. 2007) (holding that the existence of a credit relationship does not preclude a finding that a contemporaneous exchange was intended and noting that the parties had a general understanding that payments would be made at essentially the same time shipments were received) (citing *In re Payless Cashways, Inc.*, 306 B.R. 243, 247-54 (8th Cir. BAP 2004)); *Barnes v. Karbank Holdings, LLC (In re JS & RB, Inc.)*, 446 B.R. 350, 357 (Bankr. W.D. Mo. 2011) (finding that a contemporaneous exchange was intended when the payment was equal to the amount owed for monthly rent); *Official Committee of Unsecured Creditors of Contempri Homes, Inc. v. Seven D Wholesale (In re Contempri Homes, Inc.)*, 269 B.R. 124, 128-29 (Bankr. M.D. Pa. 2001) (finding that a contemporaneous exchange was not intended when evidence showed that although payments roughly corresponded to the value of new goods shipped, checks were applied to old invoices).

Contemporaneousness is a flexible concept that requires a case-by-case inquiry into all relevant circumstances—such as length of delay, reason for delay, nature of the transaction, intentions of the parties, and possible risk of fraud—surrounding an allegedly preferential transfer. *Pine Top Ins. Co. v. Bank of Am. Nat'l Trust & Sav. Assoc.*, 969 F.2d 321, 328 (7th Cir. 1992).

Tomball Forest does not meet its burden of establishing that the transfer was intended to be a contemporaneous exchange. Tomball Forest's only evidence of intent is the conclusory statement in Goodman's affidavit that "Tomball and Bison intended for each delivery, invoice, and payment to be a contemporaneous exchange." Def's Ex. A; ECF No. 22-1, at 2.

The only evidence that the exchanges were substantially contemporaneous is that each invoice was paid approximately one month after it was issued. This evidence falls far short of

establishing that the exchanges were substantially contemporaneous: it suggests the opposite conclusion.

On the basis of the same evidence, the Committee moves for partial summary judgment against Tomball Forest on the contemporaneous exchange defense. Tomball Forest admits that the four invoices were each issued 30 to 45 days before Bison made the four payments. The Committee therefore argues that, as a matter of law, the payments were not substantially contemporaneous. Tomball Forest argues that the payments were received within one month of the invoices, or shortly thereafter, and that the Court may take factors other than the length of the delay into account when determining whether the payment was substantially contemporaneous.

The limited summary judgment evidence shows that (i) the four payments were made 30 to 45 days after the invoices were issued; (ii) the payments were for lumber products Bison received from Tomball Forest; and (iii) "Tomball Forest and Bison made all invoices, deliveries, and payments in the regular course of business and *as agreed upon* and under ordinary business terms." Def's Ex. A; ECF No. 22-1, at 1-2 (emphasis added).

The Court need not reach the question of whether the payments were, in fact, substantially contemporaneous. The Goodman affidavit shows that the payments were made "as agreed upon" and that Bison regularly paid Tomball Forest approximately one month after Tomball Forest issued invoices. The Goodman affidavit thus shows that the parties agreed that payments would be made about a month after invoices. In other words, the parties agreed that the exchanges would *not* be contemporaneous.

Tomball Forest, citing *Pine Top Insurance Company*, argues that the definition of "substantially contemporaneous" does not exclude, as a matter of law, payments made a month after invoicing. 979 F.2d 321. The court in *Pine Top Insurance Company* held that a "two- to

three-week delay . . . did not defeat the substantially contemporaneous nature of this exchange," and that a determination of contemporaneousness required an examination of numerous other factors, including "reason for delay, nature of the transaction, intentions of the parties, [and] possible risk of fraud[.]" 969 F.2d at 328.

However, the intent requirement is less flexible than the contemporaneousness requirement. The "contemporaneous in fact" requirement is modified by the adverb "substantially." 11 U.S.C. § 547(c)(1)(B). The intent requirement contains no such modification. 11 U.S.C. § 547(c)(1)(A). The parties must intend that the exchange be actually—not just substantially—contemporaneous. Here, there is direct evidence that the parties did not intend the exchange to be contemporaneous. The Court therefore grants partial summary judgment in favor of the Committee.

*Ordinary Course of Business*

Section 547(c)(2) provides an affirmative defense for transfers in the ordinary course of business:

> The trustee may not avoid under this section a transfer to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and transferee, and such transfer was—
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
> (B) made according to ordinary business terms[.]

11 U.S.C. § 547(c)(2).

To prove the ordinary course defense, "the creditor must show that as between it and the debtor, the debt was both incurred and paid in the ordinary course of their business dealings *and* that the transfer of the debtor's funds to the creditor was made in an arrangement that conforms with ordinary business terms[.]" *Gulf City Seafoods, Inc. v. Ludwig Shrimp Co.*, 296 F.3d 363,

12 / 14

367 (5th Cir. 2002). To determine whether a debt was incurred and paid in the ordinary course, "[t]ypically, courts look to the length of time the parties were engaged in the transaction at issue, whether the amount or form of tender differed from past practices, whether the creditor engaged in any unusual collection activity, and the circumstances under which the payment was made (i.e. whether the creditor took advantage of the debtor's weak financial condition)." *Compton v. Plains Marketing, LP (In re Tri-Union Dev. Corp.)*, 349 B.R. 145, 150 (Bankr. S.D. Tex. 2006). The test of whether the payment arrangement conforms with ordinary business terms is "objective"—it must be resolved by considering whether the arrangement falls within the outer boundaries of practices in the industry. *Gulf City Seafoods*, 296 F.3d at 368-69.

Tomball Forest does not provide sufficient evidence either that the transfers were in the ordinary course of Bison's business dealings with Tomball Forest or that the payment arrangement conformed with ordinary business terms in the industry. The only evidence that the transfers were made in the ordinary course of business is Goodman's statement that "Bison ordered the products and materials and incurred the indebtedness associated with each of the above transactions in the ordinary course of business. Tomball and Bison made all invoices, deliveries, and payments in the regular course of business and as agreed upon and under ordinary business terms." Def's Ex. A; ECF No. 22-1, at 2.

Goodman's conclusory and self-serving statement is insufficient evidence. *See Burtch v. Revchem Composites, Inc. (In re Sierra Concrete Design, Inc.)*, 463 B.R. 302, 306 (Bankr. D. Del. 2012) (ruling that a "one-paragraph, conclusory allegation in [a] supporting affidavit" was "insufficient evidence to establish the ordinary course of business"). Goodman's statements that the transactions occurred in the regular course of business are conclusory, and the affidavit

provides no specific facts supporting Goodman's conclusory statements. The Court therefore denies summary judgment on the ordinary course of business defense.

## Conclusion

The Court denies Tomball Forest's motion for summary judgment. The Court grants the Committee's motion for partial summary judgment.

SIGNED **May 14, 2012.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE